Alright, Mr. Bryant, whenever you're ready. May it please the court, my name is Gary Bryant and I represent the appellant Jonathan Davey. Mr. Davey ran a hedge fund and he invested a good deal of his client's money in a forex trading platform known as Black Diamond and it turned out to be a Ponzi scheme. The government indicted and convicted Davey for securities fraud based on its contention that Davey had represented to his investors that he had conducted due diligence when in fact he knew virtually nothing about Black Diamond. We're not challenging that conviction. After arguing to the jury that Davey was guilty of securities fraud because he knew so little about Black Diamond, the government then argued in security conviction against Davey because he knew so much about Black Diamond and in fact he took over Black Diamond and ran a derivative Ponzi scheme. They argued that Davey used his hedge fund for no other purpose. It was not legitimate. They used it simply to run Black Diamond, steal his client's money, which is completely different from securities fraud where he's misrepresenting Black Diamond to get money to put it into Black Diamond. They're now saying there came a time when he knew so much that he ran the Black Diamond Ponzi scheme for the purpose of stealing clients' money and funding a lavish lifestyle. That's what we're challenging on this appeal, those convictions. The government concedes that Davey didn't know that Black Diamond was a fraud when he first started putting his client's money into Black Diamond. In fact, that was part of their case. He didn't know anything about Black Diamond. So the key is at what point did Davey go from knowing so little that telling his clients this was a good investment with securities fraud to knowing so much that he understood that this was a Ponzi scheme and yet he was still taking clients' money in order to fund this lavish lifestyle? Well, what the government said is that time occurred when the mastermind behind Black Diamond said, we're going to close this trading platform down and we're going to cash you out. And at that time, Davey thought he was a millionaire. He thought he made all statements he's getting from Black Diamond. And the government said once that happened, any money he took after that point was part of a Ponzi scheme because Davey had no reason to take money and invest in his hedge fund at that time. So what does Davey need to do to present? That's the government's narrative. Davey's defense, its narrative was this. Look, I invested my clients' money in not just Black Diamond, but I had an investment called Amcal Capital. I had an investment called Audience Alliance. I had an investment in Mexico, another forex trading platform. Incidentally, they were all bad. And nobody's arguing that Davey knew what he was doing in managing the hedge fund. But Davey's point was, look, in February when Black Diamond shut down, I still had a hedge fund. I was still getting money back from Amcal Capital and in fact got $4.1 million of his clients' money back that the government froze once the Black Diamond Ponzi scheme fell apart. He also had $2.4 million of his clients' money in Audience Alliance. So he wanted to present this evidence. And he also wanted to present evidence that there did come a time after months of trying to get money out of Black Diamond, there came a time when he said, something's wrong here. And at that time, he stopped taking investor funds. So that's what he needs to prove. And what we're challenging is the fact that the judge- How much of the evidence as to when he knew Black Diamond was a fraud is dependent on his credibility? From this trial, virtually all of it. And the reason that it was all dependent on his credibility is because the judge would not allow corroborating testimony. And I'll give you the perfect example. The government had no problem having Jonathan investments. But the defense brought the head of Audience Alliance in from Australia, flew him in to testify, yeah, this guy has invested $2.4 million into my company. I'm hoping to give a return. The judge said, no, he can't testify. No, but my question was his knowledge about Black Diamond being a fraud, not whether or not he made other investments. His knowledge as to when he first believed Black Diamond was a fraud, how much of that is dependent just on his credibility? Well, if what you mean, yeah, it's his state of mind. I mean, we're all trying to figure out at what point did he know this was a fraud? Because if he kept taking money after he knew it was a fraud, then he's guilty. And obviously, he's going to testify, I knew here, and that's when I stopped taking money. And he did. And the government had no problem. What the defense tried to do is to say by September, he started to get really suspicious. And he told the jury, so I stopped taking money. The government says, that's no problem. But he was prepared to put two witnesses on. One, the head of a Bible college that had a tiny endowment for a college of $750,000 came to Jonathan Davey in September of 2009 and said, hey, I'd like to put this $750,000 into your hedge fund. And Davey said, no. And he testified at that time, he had real concerns. The government moved in limiting to keep that testimony out. And he had another witness who came down and said, I had $250,000. I tried to give this guy. In the indictment, they said, there came a time when Jonathan Davey began running the derivative Ponzi scheme. It's all about timing. And they said, we'll let Jonathan Davey testify that he turned money away. After all, he's the guy accused of being charged with four felonies. His credibility is at stake, et cetera, et cetera. But when he said, OK, I need to bring in cooperating evidence, evidence that is beyond impeachment. I'd like to have these people get on a stand and say, I tried to give this man a million dollars in new investor money. Critical. In fact, the very basis of a Ponzi scheme. That's what the indictment says. He's taking new investment money to pay off old investors. And the evidence was by September, he's got investors banging on his door demanding their money. And he's got these people coming with new investor money. This is probably the first Ponzi scheme case in the world in which the guys that's supposed to be running the Ponzi scheme turns away a million dollars in new investment money. Now, whether that would have carried today, I don't know. But there's no way in the world that you can put on your narrative, put on your defense that, look, there came a time when I got it. I became real concerned and I turned away money and have the government move in limine to exclude every single witness that is going to get on the stand and what that guy just said. It's true. I came with money after those people offered him money. No, he did not. The other evidence that we believe it was error to exclude was regarding that evidence. Initially, when you sought to bring these investors in to say, he wouldn't let me invest my money. I think I recalled district court initially was going to allow you to do that based upon a profit of evidence that the defendant was going to testify. Right. Well, I'm waiting for Black Diamond to be cashed out. Right. But when it became apparent that all these witnesses are going to say is that he just held off investments, the court said it was not relevant. Yeah. And I don't understand why it wouldn't be relevant. What Jonathan Davey testified to was I turned that money down because I had concerns about Black Diamond. And the judge said and the judge seemed to think that that was irrelevant. And it seemed to buy the government's argument that this is nothing more than I think one of them during the trial, they had said, you know, this is like bringing in the president of a bank to say, hey, the guy didn't rob my bank. Well, that sort of dismissive notion misses the government's case altogether. What the government was saying was he's running a Ponzi scheme, which requires new money. So the government but the government to prove this just needed to prove the defrauding of any investor. So the fact that he turned away for some undisclosed reason from investors, what does that how does that make this relevant? Well, remember, the government's entire case is not that he knew this was a fraud from the beginning. The government's case is there came a time when he knew it was a fraud. The government said it's February. He says, no, it's not till September, October. And as evidence of his side of the case. Here's why evidence that I thought it was then because someone offered me a million dollars here. And I said, no. And that million dollars, his hedge fund is going to collapse and did. And if he had kept that million dollars, it would have kept going. It is the quintessential. Even if it was error, didn't the government didn't your client testify that he had turned away? Yes, he did. I think they're sufficient to just say, well, it's harmless. What's the big deal? You're going to have someone come in, testify that because that's all they were saying. Yes. Say any other thing else. Well, I think that proves two things. Number one, they knew it was relevant because they let this guy charged with four felonies that the government called a liar over and over and over at trial. They let him testify about it. But when you want to bring in the president of Appalachian Bible College to confirm it, they move in limine to stop it saying it's not relevant. Why is it relevant for Jonathan David to say it, but not relevant for someone beyond impeachment to say it? There's only one reason for that. The government knew how in the world are we going to explain why this guy turned down a million dollars when he was in desperate need of it? I'm speaking to the homelessness of it. I mean, government client takes the stand. I think he testifies, turn away investors in the court, let him tell who they were. I mean, what the whole details and everything there. And you say it was harmful. Yes. It was prejudicial because you didn't let the actual people come in. Yes. All this comes in anyway. Your honor. I think when you've got a criminal, when you got someone that has been government didn't contest that the that's not true. Well, we've the cases we've cite stand for the proposition that you have the right to present corroborating evidence, especially when you're a criminal defendant, you're a criminal defendant. You're the guy that the government says is a liar. They say it over and over and over again. And this was not a long trial. I mean, I've been involved in trials that lasted more months than this one lasted days. And when when the defense said, hey, we'd like to get this evidence in the we got this many witnesses. It's going to take a day and a half. The judge said, well, that's way too long. I mean, this is corroborating evidence. And we think that the law says that when you're a criminal defendant and state of mind is an issue, we believe state of mind was an issue here that you have the right to bring in. This is just two witnesses who's going to say, yes, I brought this guy a certified check for seven hundred and fifty and two. That's a million dollars. Seven hundred fifty hundred. Understand how is that harmful if you've got a whole parade of folks that is clear they are testifying live to them. You got two people say you turn me away. Yeah. I mean, there's no nothing else. Just he wouldn't take my money. Well, if that were the case, and it would never be error for the judge to exclude any corroborating evidence and allow them to take the stand and he tells you, I turn people away and this all up and the government doesn't test. No, the government is undisputed evidence. Turn away. Everything you want to get in is there, except you just didn't have this body to see it. The government did contest it. The government allowed him to testify. What the government basically said is we're going to allow this criminal defendant to testify all he wants, but we're going to move in limine for any corroborate testimony. That's what we have, there's no question. They let him testify, but they would not allow these unimpeachable corroborating witnesses. And we believe that that was under investigation when he did not take this money. I do not believe he was judge. How did he know things were going bad? Because he couldn't get money out of Black Diamond. He thought he'd made millions of dollars and he was waiting for his big payout and the money didn't come and there was excuses and the money didn't come. The government didn't seek to prove, you say, that he took money after these people. No, the government's theory was that any time after Black Diamond shut down, he had... But you're saying the government didn't seek to prove that he accepted money from others after he turned down the Bible college and those people. I don't think they did. So he was only confronted with evidence against him up until the time, up until some point before he turned these people down. That's right. When he apparently thought that... And his narrative was... That's right. He would certainly be caught if he took their money and immediately had no way to pay anybody back. What's at issue is his state of mind. When did he know it was a Ponzi scheme? This is simply evidence of when he knew it was a Ponzi scheme. He knew that it had gone south, whether it was a crime or not. Well, by the time... By September, yes. When he's refusing this money, he knows there's a big problem. Yeah, he thinks there's a problem. He's not the only one that has this problem. Probably not. That other people know it's... Right. This is... Why do you go into... Why does he need to go... Why does he have to go into this thing about the people that he turned down after everybody knows it's a bad investment, except the people who wanted to invest the money? Because it's contrary to the very nature of a Ponzi scheme. If someone is running a... It's not contrary. If you know you're likely to be caught tomorrow, that you would turn down an investment today. Well, I understand, Your Honor. I wanted to hit the tax evasion and I don't have time for that now. So we're allowing our briefs for the tax evasion's restitution order. All right, Mr. Enright. Good afternoon. May it please the Court. Anthony Enright for the United States. I want to clear something up. Jonathan Davey was not charged with knowing that Black Diamond was a fraud or that Black Diamond was a Ponzi scheme. The jury heard evidence that Jonathan Davey engaged in two kinds of fraud. First, that he made misrepresentations that he conducted due diligence on Black Diamond when he had not, in fact, done so. And second, that after the spring of 2009, when he stopped sending investor money to any investment, stopped sending it to Black Diamond and stopped sending it to any of his other investments, that he operated his own Ponzi scheme. He took money from investors representing to them that that money would be invested in foreign exchange and foreign currency exchange. And he didn't invest that money. He put it in a bank account. And he used that money to make Ponzi payments to other investors who believed that their money was being invested when it wasn't and used that money to pay his personal expenses, including building his house in Ohio and other personal expenses. Now, both of those theories were supported by significant evidence before the jury. And the jury was permitted to convict Davey of both the wire fraud conspiracy and the securities fraud conspiracy under either of those theories. And the second theory is the only one that Davey disputes in this appeal, as he mentioned. But in any event, the district court was well within its discretion by excluding the evidence that it did because it was not relevant to either of those bases for either conviction. I'll start with the three individuals from whom Davey did not accept money in late 2009. Judge Wynn was correct. That was not disputed by the United States. Jonathan Davey testified about it. He identified the specific individuals. They were not individuals from whom he had taken money before. And we put in evidence. And we have a summary chart identifying that evidence at page four of our supplemental joint appendix, explaining all the people from whom he did take money in 2009. And I think the last payment was early October of 2009. And there were nobody in those late months of 2009 who, well, there were no new payments. And there were no new investors at that time. So it was really undisputed. And he had everything he needed to make that case to the jury. What he wanted to do is call three individuals who would say, I didn't take money. And the district court was well within his discretion to say, those individuals saying, I didn't take money, that's just not relevant to the proposition of what Jonathan Davey testified to, which is, I didn't take money from anybody at the end of 2009. Similarly, there were these two other investments. Jonathan Davey invested in AmCal and Audience Alliance by late 2008. But he wasn't sending investor money that he was soliciting in mid-2009 to those investments. So the fact that there were perhaps funds available in AmCal and that the principal of Audience Alliance would have testified, I still intend to pay that investment back, the district court, again, acted within its discretion to say, that's simply not relevant to the question of what was his intent with respect to the people he was telling, I perform due diligence on Black Diamond, or I'm investing your money in foreign exchange when, in fact, the money is going into a bank account and for Ponzi payments. Now, I want to briefly address the tax evasion count. It's a little bit different. When you make, when you receive the proceeds of a loan, a true loan, that is ordinarily not income because when you receive those proceeds, you also incur at the same time an obligation to repay those proceeds, to pay the obligation on a loan. If, however, you do not intend at the time you receive those proceeds to repay it, it's not a true loan and it is, in fact, income. So when Jonathan Davey declared, when Jonathan Davey received a loan that he did not intend in 2008 to repay, and then declared that, those proceeds as a loan on his income tax and did not pay income tax on it, he willfully evaded tax. And the reason we know that is because his bookkeeper, Jonathan Davey's bookkeeper, Barry McFerrin, testified that Davey told him in no uncertain terms in late 2008, I plan to take this loan and I do not intend to repay it. That is direct evidence. The jury was entitled to credit it. And that supports the conviction for tax evasion. Did you have to prove both the intent to evade taxes and the intent to not repay the loan? No, Your Honor. All we had to prove was that he intended willfully to evade taxes in 2008. It would not have been a defense. It would not have been a defense for... I guess I'm asking, was it enough to say that Davey mischaracterized the transfer as a loan in 2008, or is there a separate requirement that he intended to evade taxes? It's... the requirement is that we prove that he intended to evade taxes. However, the evidence of that and what supports that showing is that he knew that this was not a true loan because he told Mr. McFerrin, I do not intend to repay it. Yet he declared it on his taxes as a loan and did not pay the income tax that he was required to pay because it was, in fact, not a true loan. And I want to address briefly the issue about the 2010 tax return. This may not be entirely clear in the record. The record alludes to it in the indictment, but I don't know if there was any other evidence before the court. But in early 2010, on March 10th, Davey met with the FBI, and the FBI specifically asked him about this loan and the propriety of it. So he knew that he was under investigation for that specific loan when several months later, he filed his 2010 tax return. And the district court acted well within its discretion to hold evidence about that tax return. Essentially, oh, after he had been aware that he was under investigation, he declared his tax return to bring it into conformity with what he had put on his QuickBooks that he defaulted on a loan. Simply not relevant to his intent when he filed his 2008 tax return. I do have a significant amount of time left, but if the court has no further questions, I will... Do you have any questions? No, I think we understand your position. Then I will yield the balance of my time back to the court and ask that this court affirm the district court's judgment. Thank you, Your Honor. Thank you. Mr. Bryant. The government now says that this isn't at all about what Jonathan Davey knew about the Black Diamond Ponzi scheme, and that what he did after the fact had nothing to do with the Black Diamond Ponzi scheme. It was something separate. It's not the indictment. Paragraph 29 specifically says, the conspirators knew that if victims learned what the conspirators knew about Black Diamond, the scheme would collapse and be exposed, and they would be deprived of their income stream. New victims would not invest. The narrative that Jonathan Davey tried to introduce was that he did not know Black Diamond was a fraud. He was waiting in 2009 to get these huge payouts based on the statements that he was getting from Black Diamond. He kept getting new investments. He kept running his hedge fund. Yes, he did take money out because he thought that he had earned... His agreement running a hedge fund with his investors was he gets a large percentage of the earnings from the investment. Jonathan Davey thought he had made millions of dollars, and so he's pulling money out to run his hedge fund. He borrows against his earnings to build a home in his home state of Ohio, something that's not really consistent with the notion of running a Ponzi scheme. And instead of taking the income, he borrowed against his earnings because he wanted to keep it in Black Diamond, and he characterized it on every single tax document, on his QuickBooks, everything as a loan. It's an interesting way in which he did it. I'm very intrigued by the way business or things are done. He has a house, and then how does this other entity come into play in which he borrows the money? I don't know all the nuances of how of the different corporate structures that he put in place to borrow the money, but no one disputes that he borrowed the money. He recorded on his 2008 tax return that he borrowed the money. What did he borrow it from? What company? He borrowed it from an entity that was created in between, I think, his hedge fund and himself. But it was an entity that was created that he controlled. My understanding is that that entity's money was Jonathan Davies' earnings in Black Diamond. So he pays it into this entity. Yes. And then he borrows from the entity. That's right. And he recorded it as a loan. No taxes have been paid. Well, in 2009, on his... That's not 08. 08. He did not pay taxes because he recorded it on every single document as a loan. That's a loan. Yes, that was a loan. Tell me how it's a loan again because I'm intrigued with that. Because he didn't pull the money out of Black Diamond in order to do this. I mean, he borrowed against his earnings because he thought this money was earning... This company received the money from Black Diamond, which is really his earnings. But then he borrows from the company his earnings. It would be like a salary that you get. Instead of taking my salary, pay it to a company. And then go borrow it from the company. And you don't pay taxes on it? Well, Your Honor, if... Is that too simplistic? I mean, that sounds exactly what this is. All I can say is that, yes, it is. Because if he doesn't pay... I can do that as a judge. I can say, send my salary to a company that I established. And I'll just borrow it from it. And then we'll go... My wife would love to hear that. I can then go buy a house and not have to pay taxes on it. Well, when you don't pay that... I'm asking, is that too simplistic? Is that what happened here? No, I think that is too simplistic. And here's why. Because if you borrow money... Can you imagine how you figure you can get away with it? And I don't think you can. And I don't think anybody thinks you can. But when you borrow money and you default on that loan, it's not as though, hey, I've got the money, I can walk free. Jonathan Davey recorded in his QuickBooks account that this was forgiven debt that triggered the tax liability in 2009. He owed the taxes. Now, they say, well, that's after the government got all over him. No, he filed his 2009 tax return after the government confronted him. But the QuickBooks accountant testified that he had already recorded that loan default as forgiven income triggering the tax liability. You have to accept this alone. Yeah, I mean, and that goes to a state of mind. That was his narrative. And again, if what the court says is, Jonathan Davey can testify to relevant evidence, but he's not allowed to bring in the corroborating evidence or the corroborating testimony, we can't win this appeal. But we don't think that a criminal defendant is limited in his evidence to, you get up and you can testify and everything rises and falls on whether or not the jury believes you. We believe the error was excluding this other evidence that was necessary for the jury to get around his credibility issues that he clearly had. Thank you. And let me ask you one quick question before you leave. Going back to the question about the corroborating evidence that you sought to introduce, was that offered before he testified or after he testified? Before. Before he testified? I think it was before. Do you remember if it was before? I think it was before. Okay. All right. Thank you. All right. We'll come down in Greek Council and.
judges: William B. Traxler Jr., James A. Wynn Jr., Norman K. Moon